UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BRYSON TYLER LOKKEN, | Case No. 3:13-cv-00608-MMD-WGC |
| Petitioner, | ORDER |
| v. | |
| ROBERT LeGRAND, | |
| Respondents. | |

Before the Court for decision is a habeas corpus petition under 28 U.S.C. § 2254 brought by Bryson Tyler Lokken, a Nevada prisoner.

I.     PROCEDURAL BACKGROUND[1]

Lokken seeks habeas relief from a judgment of conviction entered in the Second Judicial District Court in Washoe County, Nevada. On January 31, 2007, a jury found Lokken guilty of two counts of sexual assault on a child and one count of lewdness with a child under the age of fourteen years. The jury found Lokken not guilty on a charge of false imprisonment. After a sentencing hearing on March 2, 2007, the state district court sentenced Lokken to terms of life imprisonment with the possibility of parole after twenty years on the sexual assault counts and life imprisonment with the possibility of parole after ten years on the lewdness count, all terms to be served concurrently.

Lokken filed a direct appeal. On June 4, 2008, the Nevada Supreme Court entered an order affirming the judgment of conviction. Lokken filed, on May 23, 2009, a

---

[1]This procedural background is derived from the exhibits provided by the respondents at ECF Nos. 9 through 19 and this Court's own docket.

1   proper person petition for writ of habeas corpus in the state district court. After

2   appointment of counsel, Lokken filed a supplemental petition on November 20, 2009.

3       The state district court held an evidentiary hearing on the petition on December

4   12-13, 2011. Lokken also filed motions for a new trial on October 27, 2011, and January

5   28, 2012, which were denied. On May 9, 2012, the state district court entered an order

6   denying habeas relief.

7       On July 25, 2012, the Nevada Supreme Court affirmed the state district court's

8   denial of Lokken's motion for a new trial. On October 16, 2013, the Nevada Supreme

9   Court affirmed the state district court's denial of Lokken's petition for habeas relief.

10      On November 4, 2013, this Court received Lokken's federal petition for a writ of

11  habeas corpus containing four claims. Pursuant to respondents' motion to dismiss, this

12  Court determined that portions of Grounds 1, 2, and 4 were unexhausted. Lokken

13  abandoned those claims.

14      The remaining claims are before the Court for a decision on the merits.

15  **II.   STANDARDS OF REVIEW**

16      This action is governed by the Antiterrorism and Effective Death Penalty Act

17  (AEDPA). 28 U.S.C. § 2254(d) sets forth the standard of review under AEDPA:

18
19      An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with
20  respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

21      (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as
22  determined by the Supreme Court of the United States; or

23      (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State
24  court proceeding.

25  28 U.S.C. § 2254(d).

26      A decision of a state court is "contrary to" clearly established federal law if the

27  state court arrives at a conclusion opposite that reached by the Supreme Court on a

28  question of law or if the state court decides a case differently than the Supreme Court

1    has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–

2    06 (2000). An "unreasonable application" occurs when "a state-court decision

3    unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."

4    *Id.* at 409. "[A] federal habeas court may not "issue the writ simply because that court

5    concludes in its independent judgment that the relevant state-court decision applied

6    clearly established federal law erroneously or incorrectly." *Id.* at 411.

7          The Supreme Court has explained that "[a] federal court's collateral review of a

8    state-court decision must be consistent with the respect due state courts in our federal

9    system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a

10   'highly deferential standard for evaluating state-court rulings,' and 'demands that state-

11   court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773

12   (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*,

13   537 U.S. 19, 24 (2002) (per curiam)). "A state court's determination that a claim lacks

14   merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on

15   the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101

16   (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court

17   has emphasized "that even a strong case for relief does not mean the state court's

18   contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75

19   (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA

20   standard as "a difficult to meet and highly deferential standard for evaluating state-court

21   rulings, which demands that state-court decisions be given the benefit of the doubt")

22   (internal quotation marks and citations omitted).

23         "[A] federal court may not second-guess a state court's fact-finding process

24   unless, after review of the state-court record, it determines that the state court was not

25   merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir.

26   2004); *see also Miller-El*, 537 U.S. at 340 ("[A] decision adjudicated on the merits in a

27   state court and based on a factual determination will not be overturned on factual

28   grounds unless objectively unreasonable in light of the evidence presented in the state-

court proceeding, § 2254(d)(2).").  Because *de novo* review is more favorable to the petitioner, federal courts can deny writs of habeas corpus under § 2254 by engaging in *de novo* review rather than applying the deferential AEDPA standard. *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

## III.    DISCUSSION

### A.    Ground 1

In Ground 1, Lokken alleges that he received ineffective assistance of counsel, in violation of his constitutional rights, due to trial counsel's failure to investigate certain witnesses who would have supported his claim that the intercourse with the victim was consensual.  In particular, Lokken identifies Thomas and Tamara McMahon and Jaclyn Runde as additional witnesses counsel should have investigated and presented to corroborate the testimony of defense witnesses presented at trial.  He also alleges ineffective assistance due to counsel's failure to call an expert witness to challenge the findings of Denise Engel, a nurse who examined the victim after the alleged sexual assault and testified for the State at trial. (ECF No. 10-5.)

Ineffective assistance of counsel claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, a petitioner must satisfy two prongs to obtain habeas relief — deficient performance by counsel and prejudice. 466 U.S. at 687.  To meet the performance prong, a petitioner must demonstrate that his counsel's performance was so deficient that it fell below an "objective standard of reasonableness." *Id.* at 688.  As to the prejudice prong, the court "must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent [counsel's] errors." *Strickland*, 466 U.S. at 696.  Put another way, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

To support its consent theory, the defense presented witnesses at trial who testified about the victim's statements and conduct after Lokken and the victim had

4

1   intercourse. (ECF Nos. 10-6 and 10-7.) At Lokken's post-conviction evidentiary hearing,

2   some of these witnesses testified again, but Lokken also called several other witnesses

3   to provide additional testimony on the subject, including the witnesses mentioned above.

4   (ECF Nos. 16-10 and 16-14.)

5        In denying relief, the state district court stated:

6            [P]etitioner alleges his counsel was ineffective for failing to
         investigate and present certain witnesses who could have exculpated the
7        petitioner. Petitioner presented some of these witnesses or the substance
         of their testimony through other witnesses at trial. Thus, petitioner failed to
8        show his counsel was deficient or that petitioner suffered prejudice to such
         an extent that the outcome of the trial would have been different had the
9        additional witnesses been presented.

10           Moreover, the additional witnesses petitioner called at the
         evidentiary hearing, including petitioner himself, actually weakened
11       petitioner's case. The witnesses contradicted one another about how long
         the victim and petitioner were together, the type of sexual activity petitioner
12       and the victim engaged in, who was present outside of petitioner's home
         after the crime occurred, and whether the door of petitioner's bedroom was
13       open or closed during the crime. Accordingly, the court denies the claim.

14   (ECF No. 17-19 at 5.)[2]

15        On appeal, the Nevada Supreme Court held as follows:

16           [A]ppellant claims that trial counsel was ineffective for failing to
         thoroughly investigate witnesses who were called at trial and other
17       witnesses who were not called at trial. Appellant failed to demonstrate that
         he was prejudiced. After the evidentiary hearing, the district court
18       concluded that the additional information that appellant wanted trial
         counsel to present through the witnesses was information that was already
19       presented at trial through other witnesses and that the information was
         merely cumulative. Further the district court concluded that these
20       witnesses may have weakened appellant's case because the witnesses
         contradicted each other regarding how long the victim and appellant were
21       together, the type of sexual activity engaged in, who was present outside
         the home of the appellant after the crime occurred, when the crime
22       occurred, and whether the door of appellant's bedroom was open or
         closed. Substantial evidence supports the decision of the district court, and
23       therefore, the district court did not err in denying this claim.

24   (ECF No. 19-25 at 4-5.)

25        The Nevada Supreme Court applied the correct federal law standard. In addition,

26   fair-minded jurists could conclude that the court reached the right decision in

27   ─────────────────
28       [2]Citations to page numbers for documents on this Court's electronic docket are
     based on CM/ECF pagination.

5

1   determining that Lokken was not deprived of effective assistance of counsel as a result

2   of counsel failing to investigate or present the designated witnesses.

3       In support of his claim that counsel was ineffective in failing to present an expert

4   witness to challenge the testimony of Nurse Engel, Lokken presented the testimony of

5   Dr. Joyce Adams at his post-conviction evidentiary hearing. (ECF No. 16-9.) Dr. Adams

6   is a pediatrician with an expertise in sexual abuse medical evaluation. (*Id.* at 5).

7       In denying relief, the state district court stated:

8       At the evidentiary hearing, petitioner presented Dr. Joyce Adams
as an expert in support of the claim that counsel failed to present an expert

9   to rebut Nurse Engel's testimony. Dr. Adams took issue with Nurse Engel's
findings that the victim suffered physical trauma from the rape. But Dr.

10   Adams conceded that the absence of injury in sexual assault cases is just
as likely as the presence of injury. Accordingly, Dr. Adam's testimony

11   would not have made a material difference in the outcome of the trial.
Furthermore, petitioner was unable to prove that it was unreasonable for

12   a criminal defense lawyer practicing in Nevada at the time of the trial not
to consult an expert like Dr. Adams in a case like this. Petitioner's expert,

13   Don Evans, Esq., was unable to testify that the prevailing professional
norm in cases like this was to retain an expert like Dr. Adams. He could

14   only state that he and perhaps a few other lawyers in Northern Nevada did
so. The court denies the claim.

15

16   (ECF No. 17-19 at 4.)

17       On appeal, the Nevada Supreme Court held as follows:

18       [A]ppellant claims that trial counsel was ineffective for failing to
retain and present an expert to refute the findings of the nurse who

19   examined the victim after the sexual assault. Appellant claims that had trial
counsel retained an expert, that expert would have testified that there were

20   no injuries to the victim in this case. Appellant failed to demonstrate he
was prejudiced. The district court concluded that the expert's testimony

21   would not have resulted in a reasonable probability of a different outcome
at trial. Substantial evidence supports the decision of the district court. The

22   expert conceded that the absence of injury in sexual assault cases is just
as likely as the presence of physical injury. Further, appellant admitted to

23   having forceful sex with the victim. *Lokken v. State*, Docket No. 49147
(Order of Affirmance, June 4, 2008). Therefore, the district court did not

24   err in denying this claim.

25       To the extent that appellant claims that the district court erred by
not taking into consideration a case in front of a different district court that

26   found trial counsel in the other case ineffective for failing to retain an
expert, appellant fails to demonstrate he is entitled to relief. The facts and

27   circumstances of the two cases were vastly different and, as stated above,
appellant failed to demonstrate that calling the expert at trial would have

28   resulted in a reasonable probability of a different outcome. Therefore, the

1
2

district court did not err by not taking the other case into consideration in its decision.

3   (ECF No. 19-25, at 3.)

4         Here again, the Nevada Supreme Court applied the correct federal law standard.

5 In addition, fair-minded jurists could conclude that the court reached the right decision

6 in determining that Lokken was not deprived of effective assistance of counsel as a

7 result of counsel failing to present an expert witness to refute the testimony of the nurse

8 who examined the victim.

9         Based on the foregoing, the Court denies Ground 1.

10     **B.**    **Ground 2**

11         In Ground 2, petitioner alleges that his constitutional right to due process was

12 violated because the state district court "erred in not granting him a new trial due to

13 conflicting evidence and newly presented evidence" regarding whether sexual contact

14 with the victim was consensual. In support of the claim, Lokken alleges (1) that two

15 witnesses testified at trial that the victim had told them the sex with Lokken was

16 consensual and (2) that three additional witnesses corroborated that testimony at his

17 post-conviction evidentiary hearing.[3]

18         The two motions for new trial filed by Lokken were both premised primarily on the

19 conclusions of Dr. Adams, not on the evidence cited by Lokken under Ground 2. (ECF

20 Nos. 15-12 and 16-20.) Thus, Lokken appears to be claiming, as he did on direct appeal,

21 that the trial court erred by not granting a new trial *sua sponte*.

22         Nevada law authorizes the state district court to grant a new trial based on its

23 independent evaluation of conflicting evidence. *State v. Purcell*, 887 P.2d 276, 278 (Nev.

24 1994). There is, however, no requirement that the court do so. Moreover, as a

25 constitutional matter, a due process violation does not arise from the presentation of

26

27         [3]As recounted in this Court's order deciding respondents' motion to dismiss, some of the factual allegations in support of this claim are unexhausted. (ECF No. 26.)

28 Lokken has abandoned those allegations. (ECF No. 27.)

conflicting evidence at trial. Instead, a petitioner's right to due process is violated if there is *insufficient* evidence to support the jury verdict. *Jackson v. Virginia*, 443 U.S. 307, 316-19 (1979). Under that standard, the court inquires as to "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (citation omitted). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.*

Here, there was sufficient evidence to find Lokken guilty beyond a reasonable doubt under the *Jackson* standard. The victim testified that Lokken had forcefully raped her in his bedroom. (ECF No. 10-4 at 31-70.) In addition, a detective who interviewed Lokken testified at trial. (ECF No. 10-6 at 17-72 and 10-7 at 2-13.) According to that testimony, Lokken initially denied any wrongdoing, then eventually admitted to sexual conduct with the victim, including "forceful" sexual intercourse with her. (*Id.*) The detective further testified that Lokken, who was twenty years old at the time, admitted that he knew the victim was only thirteen. (*Id.* at 67.) Nurse Engel testified that her findings led her to conclude that the injuries were the result of significant force. (ECF No. 10-5 at 22-55.)

Based on the foregoing, the Court denies Ground 2.

### C.    Ground 3

In Ground 3, Lokken alleges that his constitutional right to due process was violated because the prosecutor misrepresented the evidence and disparaged defense witnesses. Specifically, he alleges that the prosecutor misled the jury by making unsubstantiated accusations suggesting that Lokken's friends harassed the victim prior to trial and that his mother always allowed him to have underage persons in his bedroom without parental supervision. He also cites to a comment wherein the prosecutor referred to his "trash friends."

///

In ruling upon Lokken's direct appeal, the Nevada Supreme Court held as follows:

Lokken claims that the prosecutor committed misconduct by misstating the evidence and unfairly disparaging defense witnesses. Lokken points to the prosecutor's statement during closing argument that "[y]ou've heard that [the victim] and her family were harassed by his friends. She also had to undergo public humiliation as rumors circulated about her." Lokken also references the prosecutor's description of his home as "the house where the defendant has underaged kids in his bedroom without parental supervision apparently all the time." Lokken also argues that the prosecutor's description of defense witnesses as his "trash friends" was unfairly disparaging.

Defense counsel did not object to any of these statements. We therefore review these comments for plain error. [FN9: NRS 178.602.] Under plain error review, we will find prosecutorial misconduct if the error either: "(1) had a prejudicial impact on the verdict when viewed in context of the trial as a whole, or (2) seriously affects the integrity or public reputation of the judicial proceedings." [FN10: Rose v. State, 123 Nev. 24, _, 163 P.3d 408, 418 (2007).] The test for determining whether prosecutorial misconduct deprived a defendant of a fair trial is "whether the prosecutor's statements so infected the proceedings with unfairness as to make the results a denial of due process." [FN11: Rudin v. State, 120 Nev. 121, 136-37, 86 P.3d 572, 582 (2004).] A prosecutor may not argue facts or inferences not supported by the evidence, but is free to "argue inferences from the evidence and offer conclusions on contested issues." [FN12: Miller v. State, 121 Nev. 92, 100, 110 P.3d 53, 58 (2005) (quoting Jones v. State, 113 Nev. 454, 467, 937 P.2d 55, 63 (1997)).] We will address each of the allegedly improper statements in order.

Regarding the statement that Lokken's friends harassed the victim and her family, the victim's mother testified that Lokken and his friend Jacquelyn made phone calls to the victim's residence on separate occasions. The victim testified that she received "angry calls" and that Lokken called her a few days after the alleged sexual assault and taunted her with the fact that he had not worn a condom. We conclude that the prosecutor's statement was permissible based on the evidence presented at trial.

The State presented testimony that the neighbors heard about the victim's sexual assault allegations and that they talked about it both with each other and with Lokken and his family. Three people testified that they were friends with the victim until about the time the victim brought her rape allegation against Lokken. Two of them admitted they were now good friends with Lokken, and the other stated she and the victim were now "enemies." The victim was only 13 years old. There is sufficient evidence to permit an inference that rumors were circulated about the victim and she suffered "public humiliation."

The prosecutor's reference to the lack of supervision at Lokken's home was based on evidence presented at trial. In particular, Lokken's mother testified that she permitted her son to go into his bedroom with underage friends because she had no reason to question anyone that came into her house. She stated that her son had "quite a few friends" that were underage. She stated that it did not bother her that her son went into

9

his room and closed the door with someone who was underage because it was "nothing unusual." The prosecution's description of defendant's "trash friends" was not specifically directed at defense witnesses, and must be considered in context. [*FN13*: Rudin, *120 Nev. at 136-37, 86 P.3d at 582*.] The State used the term during closing argument:

> If she's so into him, if this is so wonderful and he's so nice and they're so happy together and this is a wonderful moment in her young life and his life, if she's so into him, then ladies and gentlemen, why isn't she walking with him to the store? Why is she hanging around with his trash friends?

We have held that it is improper to disparage defense counsel, defense tactics, or the defendant himself. [*FN14:* See Butler v. State, *120 Nev. 879, 898, 102 P.3d 71, 84 (2004)*.] However, unflattering characterizations of a defendant will not provoke a reversal when such descriptions are supported by the evidence. [*FN15:* Miller v. State, *121 Nev. 92, 100, 110 P.3d 53, 59 (2005) (citing* U.S. v. Tisdale, *817 F.2d 1552, 1555 (11th Cir. 1987))*.] We conclude that the same standard applies where, as here, the prosecutor disparaged defense witnesses. The above description of Lokken's friends, particularly after several of them had testified at trial, was disparaging to the defendant and defense witnesses, and the State admits its error. But the State maintains that the comment "accurately described the witnesses' demeanor and appearance." The record does not include descriptions of the witnesses' appearance or demeanor, and therefore we are unable to determine the accuracy of the State's contention. However, the jurors were able to view testimony and determine for themselves whether the description was valid. We conclude that the prosecutor's comments in this regard did not rise to the level of plain error.

(ECF No. 11-8 at 6-9.)

To obtain habeas relief based on a prosecutor's remarks, a petitioner must demonstrate that the remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Davis v. Woodford*, 384 F.3d 628, 644 (9th Cir. 2004) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)). In addition, "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." *United States v. Young*, 470 U.S. 1, 11 (1985).

Because the Nevada Supreme Court applied a standard that was consistent with *Darden*, its decision was not contrary to federal law for the purposes of § 2254(d). *See Early v. Packer,* 537 U.S. 3, 8 (2002) (holding that state court is not required to cite

1    federal case law, or even be aware of federal cases, to avoid its decision being "contrary

2    to" Supreme Court precedent). In addition, the Nevada Supreme Court''s decision was

3    not an unreasonable application of the federal law standard. Thus, this Court must defer

4    to it under AEDPA, and deny habeas relief on this claim.

5         **D.    Ground 4**

6         In Ground 4, Lokken claims he was deprived of effective assistance of counsel,

7    in violation of his constitutional rights, because counsel failed to advise him to testify at

8    trial. In support of this claim, Lokken alleges that his only viable defense was that the

9    sexual activity between him and the alleged victim was consensual, making him guilty

10   of statutory sexual seduction rather than sexual assault. According to Lokken, it was a

11   "he said/she said" case, which made it necessary for him to testify so that the jury could

12   weigh his credibility against the alleged victim. Lokken also alleges that he felt pressure

13   not to testify because the trial court cautioned him eleven times about testifying on his

14   own behalf at trial.

15        In Lokken's post-conviction proceeding, the Nevada Supreme Court held as

16   follows:

17        [A]ppellant claims that trial counsel was ineffective for failing to
          encourage appellant to testify. The State argues that this claim differs from
18        his claim raised below in his supplemental petition. In his supplemental
          petition, appellant claimed that trial counsel was ineffective for advising
19        him not to testify and that he waived his right to testify "under duress."
          While the claim on appeal is worded differently, it is essentially the same
20        claim, and therefore, we elect to consider the claim, *cf. Walch v. State*, 112
          Nev. 25, 30, 909 P.2d 1184, 1187 (1996) (stating that generally this court
21        need not address issues raised for the first time on appeal), and we
          conclude that appellant failed to demonstrate that counsel was deficient.
22
23        At the evidentiary hearing, trial counsel testified that he did not
          advise appellant either way. He merely presented the pros and cons of
24        testifying and left appellant to make the decision. Appellant testified that
          trial counsel discussed the pros and cons but also claimed that trial
25        counsel told him he would not be able to appeal if he testified because he
          would be admitting to conduct constituting the crimes charged. Trial
26        counsel stated he never told appellant he could not appeal if he testified.
          After the evidentiary hearing, the district court determined that appellant
27        failed to demonstrate that trial counsel told him not to testify, appellant
          understood it was his choice whether to testify, and appellant chose not
28        to. Substantial evidence supports the decision of the district court, and
          therefore, the district court did not err in denying this claim.

1   (ECF No. 19-25, at 3-4.)

2          Once again, the Nevada Supreme Court applied the correct federal law standard.

3   In addition, fair-minded jurists could conclude that the court reached the right decision

4   in determining that Lokken was not deprived of effective assistance of counsel as a

5   result of counsel failing to advise him to testify at trial.

6          Based on the foregoing, the Court denies Ground 4.

7   **IV.    CONCLUSION**

8          For the reasons set forth above, Lokken's petition for habeas relief is denied.

9                            *Certificate of Appealability*

10          This is a final order adverse to the petitioner. As such, Rule 11 of the Rules

11   Governing Section 2254 Cases requires this Court to issue or deny a certificate of

12   appealability (COA). Accordingly, the Court has *sua sponte* evaluated the claims within

13   the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v.*

14   *Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

15          Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner

16   "has made a substantial showing of the denial of a constitutional right." With respect to

17   claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists

18   would find the district court's assessment of the constitutional claims debatable or

19   wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S.

20   880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists

21   could debate (1) whether the petition states a valid claim of the denial of a constitutional

22   right and (2) whether the court's procedural ruling was correct. *Id.*

23          Having reviewed its determinations and rulings in adjudicating Lokken's petition,

24   the Court declines to issue a certificate of appealability for its resolution of any

25   procedural issues or any of Lokken's habeas claims.

26          It is therefore ordered that petitioner's petition for writ of habeas corpus (ECF No.

27   4) is denied. The Clerk will enter judgment accordingly.

28   ///

1    It is further ordered that a certificate of appealability is denied.

2    DATED THIS 20th day of December 2016.

3

4                                          _____
                                           MIRANDA M. DU
5                                          UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28